UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:23-cv-00823-MOC-DCK

| WILLIAM A. BRADLEY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | **JUDGMENT** |
| | ) | |
| ENTERTAINMENT ARTS RESEARCH, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** comes before the Court on Plaintiff's motion for default judgment. (Doc. No. 9).

### I. Background

Plaintiff filed his Complaint on December 1, 2023, raising claims against Defendant for breach of contract and, in the alternative, unjust enrichment. (Doc. No. 1). Shortly thereafter, this Court issued a summons. (Doc. No. 2). Plaintiff's counsel properly served Defendant on December 20, 2023. (Doc. No. 4).

Defendant had until January 10, 2024, to file an Answer or other responsive pleading. See FED. R. CIV. P. 12(a)(1)(A)(i). Defendant failed to do so. On April 11, 2024—three months after Defendant's deadline to respond expired—Plaintiff moved for the Clerk to enter a default under FED. R. CIV. P. 55(a). (Doc. No. 5). The Clerk obliged. (Doc. No. 8). The very next day, Plaintiff served Defendant with the Clerk's Entry of Default by First Class mail. Several months later, Defendant has still failed to plead or otherwise defend against Plaintiff's claims.

Plaintiff now moves this Court to enter a default judgment under FED. R. CIV. P. 55(b).

1

## II. Legal Standard

To obtain a default judgment under FED. R. CIV. P. 55(b), the movant must first obtain a clerk's entry of default under Rule 55(a). Metro. Life Ins. Co. v. Smith-Howell, No. 1:18-CV-00164-MR, 2020 WL 974893, at *2 (W.D.N.C. Feb. 28, 2020). Next, the movant must establish that the party in default failed to "plead or otherwise defend" the action in accordance with the Federal Rules of Civil Procedure. United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982); FED. R. CIV. P. 55(b). Where a Defendant is totally unresponsive to the movant's pleadings, the Court may in its discretion enter a Rule 55(b) default. See Park Corp. v. Lexington Ins. Co., 812 F.2d 894, 896 (4th Cir. 1987).

Upon entry of a Rule 55(b) default, the defaulting party "admits the well-pleaded factual allegations in the [movant's] complaint." Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001). The party in default does not, however, admit conclusions of law. Park Corp., 812 F.2d at 896. Upon entering a Rule 55(b) default, then, the Court "must determine whether the facts as alleged state a claim." Earls v. Forga Contracting, Inc., No. 1:19-CV-00190-MR-WCM, 2020 WL 1516813, at *1 (W.D.N.C. Mar. 30, 2020). The Court's liability determination—but not its damages calculation—may rely on the movant's well-pleaded factual allegations. Ryan, 253 F.3d at 780. If the movant's factual allegations support a finding of liability, then the Court must make independent findings regarding the movant's purported damages. Id.; S.E.C. v. Lawbaugh, 359 F. Supp.2d 418, 422 (D. Md. 2005).

## III. Analysis

Having already secured a Rule 55(a) clerk's entry of default, Plaintiff satisfies the first condition for entry of a Rule 55(b) default. See Metro. Life Ins. Co., No. 1:18-CV-00164-MR, 2020 WL 974893, at *2 (W.D.N.C. Feb. 28, 2020). And because Defendant has been totally

2

Case 3:23-cv-00823-MOC-DCK    Document 12    Filed 08/06/24    Page 2 of 7

unresponsive, the Court in its discretion finds that Defendant has failed to "plead or otherwise defend" this action accordance with the Federal Rules of Civil Procedure. See Moradi, 673 F.2d at 727; Park Corp., 812 F.2d at 896. The Court will, therefore, enter a Rule 55(b) default in Plaintiff's favor.

In consequence, the Court will treat all of Plaintiff's well-pleaded factual allegations—besides those pertaining to damages—as admitted by Defendant. Ryan, 253 F.3d at 780. The Court must still determine, however, whether Plaintiff's well-pleaded factual allegations state a claim on which Defendant is liable. Earls, No. 1:19-CV-00190-MR-WCM, 2020 WL 1516813, at *1 (W.D.N.C. Mar. 30, 2020).

Plaintiff raises two claims for relief: breach of contract and unjust enrichment. To prevail on his breach claim, Plaintiff must establish "(1) existence of a valid contract and (2) breach of the terms of [the] contract." Wells Fargo Ins. USA, Inc. v. Link, 372 N.C. 260, 276 (2019). Because the existence of a valid contract is a necessary element of Plaintiff's breach claim, Plaintiff cannot prevail on both his contract and unjust enrichment claims: where a valid contract exists between the parties, unjust enrichment is unavailable under North Carolina law. See Booe v. Shadrick, 322 N.C. 567, 570 (1988).

Exhibit 1 to Plaintiff's Complaint, the Offer Letter executed November 22, 2021, establishes a valid contract between the parties. Thus, Plaintiff satisfies the first element of his breach claim, and Plaintiff's unjust enrichment claim is extinguished. The Offer letter stipulates that Plaintiff work as Defendant's Chief Financial Officer in exchange for $6,250.00 per month, 115,740 common shares of Defendant Entertainment Arts Research, Inc. ("EARI") per month, and bonus payments of one share of EARI common per dollar of complete acquisitions. (Doc. No. 1-1). Plaintiff, satisfying his end of the bargain, worked for Defendant for four months.

Defendant, however, failed to provide Plaintiff the compensation contemplated by the Offer Letter. Thus, Plaintiff's well-pleaded factual allegations show that Defendant breached the terms of the Offer Letter. The Court, therefore, concludes that Plaintiff's breach of contract claim supports a finding of liability against Defendant.

Concluding that Plaintiff's factual allegations support a finding of liability, the Court next undertakes an independent assessment of Plaintiff's damages. See Ryan, 253 F.3d at 780; Lawbaugh, 359 F.Supp.2d at 422. In North Carolina,

> A party to a contract who is injured by another's breach of the contract is entitled to recover from the latter damages for all injuries and only such injuries as are the direct, natural, and proximate result of the breach or which, in the ordinary course of events, would likely result from a breach and can reasonably be said to have been foreseen, contemplated, or expected by the parties at the time when they made the contract as a probable or natural result of the breach.

Lamm v. Shingleton, 231 N.C. 10, 14 (1949). Here, the contract between Plaintiff and Defendant explicates the direct, natural, and proximate injury to Plaintiff by Defendant's breach: the compensation Plaintiff would have received had Defendant honored their contractual obligation. According to the contract, Defendant was to pay Plaintiff cash compensation of $6,250.00 per month, 115,740 shares of EARI common per month, and bonus payments of one share of EARI common per dollar of complete acquisitions. (Doc. No. 1-1). Because Plaintiff worked for Defendant for four months without any compensation, Plaintiff's damages on the contract amount to $25,000.00 cash and 462,960 shares of EARI common. Plaintiff is further entitled to 812,500 shares of EARI common for securing the acquisition of Bell City Brewing Company ("BCBC"), valued at $812,500. The terms of the BCBC acquisition entitled Plaintiff to an additional 1.6 million shares of EARI common. (Doc. No. 11).

Plaintiff's damages—$25,000.00 cash and 2,875,460 (462,960 + 812,500 + 1,600,000) shares of EARI common—were a "direct, natural, and proximate result" of Defendant's breach.

Lamm v. Shingleton, 231 N.C. 10, 14 (1949). But Plaintiff argues he is entitled to more. Specifically, Plaintiff contends that Defendant's breach (failure to issue Plaintiff the promised shares) caused Plaintiff to suffer lost profits by preventing Plaintiff from utilizing the Offer Letter's "leak out provision" to sell those shares at the then-prevailing market price.

Under the leak out provision, Plaintiff was entitled to sell 25% of his total shares 6 months after the termination of his employment by Defendant, another 25% at the 12-month mark, 25% more after 18 months, and the remaining 25% 24 months after his termination. Plaintiff maintains that, had Defendant satisfied its contractual obligation to issue the shares, Plaintiff would have sold the maximum permissible number of shares at each of the 6, 12, 18, and 24-month marks. (Doc. No. 11).

EARI common—which is now worth $0.00025 per share—was valued at three cents per share 6 months after Plaintiff's termination, five-and-a-half cents at the 12-month mark, three cents at the 18-month mark, and two cents per share at the 24-month mark. (Doc. No. 11, Ex. C-G). Had Plaintiff fully availed himself of the leak out provision by selling 25% of his 2,875,460 shares on each of the four dates, he would have earned a total profit of $104,235.43. The 2,875,460 shares to which Plaintiff is now entitled are worth only $718.87. Thus, Plaintiff contends, he is entitled to expectation damages of $103,516.60 ($104,235.43-$718.87). (Doc. No. 10 at 7).

The Court, based on its independent assessment of Plaintiff's damages, particularly Mr. Bradley's sworn declaration and appended exhibits, agrees. In North Carolina, the party injured by a breach of contract is entitled to expectation damages for their loss, i.e., "to be placed as near as may be in the position which he would have occupied had the contract not been breached." Harris & Harris Constr. Co. v. Crain & Denbo, Inc., 256 N.C. 110, 123 (1962). Breach plaintiffs

5

may recover lost profits as a form of expectation damages, but "must prove such losses with reasonable certainty." McNamara v. Wilmington Mall Realty Corp., 121 N.C. App. 400, 407, 466 (1996) (citation and internal quotation marks omitted). Plaintiff does so here, showing that he would have accumulated profits of $104,235.43, minus the $718.87 his stock is currently worth, had Defendant's breach not prevented Plaintiff from availing himself of the leak out provision. (Doc. No. 11). Thus, the Court finds that Plaintiff is entitled to total damages of $128,516.60 ($25,000 + $103,516.60) for Defendant's breach.

Finally, Plaintiff contends, and the Court's independent analysis confirms, that Plaintiff is entitled to pre-judgment interest accruing "from the date of breach." See N.C. GEN. STAT. § 24-5(a); PCS Phosphate Co. v. Norfolk S. Corp., No. 4:05-CV-55-D, 2008 U.S. Dist. LEXIS 54199, at *17 (E.D.N.C. Jan. 28, 2008). Because the parties did not specify otherwise, the applicable rate of pre-judgment interest is set by statue at 8%. N.C. GEN. STAT. § 24-1; Barrett Kays & Assocs., P.A. v. Colonial Bldg. Co., Inc., 129 N.C. App. 525, 529, 500 (1998). Plaintiff requests the Court assess interest "beginning on each date that Plaintiff could sell [EARI shares] pursuant to the [l]eak [o]out [p]rovision." (Doc. No. 10 at 7). That would entitle Plaintiff to $4,197.38 in pre-judgment interest on the $28,754.60 Plaintiff would have realized at the 6-month sale,[1] $4,202.90 in pre-judgment interest on the $39,537.58 Plaintiff would have realized at the 12-month sale,[2] $1,422.76 in pre-judgment interest on the $21,565.95 Plaintiff would have realized

---

[1] The 6-month leak out date was September 20, 2022, 666 days before Plaintiff's motion. At $6.302/day (8% of $23,754.60, divided by 365 to calculate a daily interest rate), pre-judgment interest totals $4,197.384.
[2] The 12-month leak out date was March 20, 2023, 485 days before Plaintiff's motion. At $8.665/day ($39,537.58*0.08/365), pre-judgment interest totals $4,202.899.

at the 18-month sale,[3] and $374.99 in pre-judgment interest on the $14,377.30 Plaintiff would have realized at the 24-month sale,[4] for a total of $10,198.04 in pre-judgment interest.[5]

The Court will grant Plaintiff's motion, enter a Rule 55(b) default, and order Defendant to pay Plaintiff damages totaling $138,714.64, including pre-judgment interest.

## ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's motion for default judgment (Doc. No. 9) is **GRANTED**. The Court hereby **ENTERS** its Judgment of Default under Rule 55(b) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that Plaintiff shall recover from Defendant the following damages:

1. $25,000.00 in fulfillment of unpaid compensation for services performed by Plaintiff for Defendant;

2. $103,516.60 expectation damages (lost profits);

3. $10,198.04 pre-judgment interest;

4. An amount to be determined in post-judgment interest according to the North Carolina statutory rate.

Signed: August 6, 2024

**SO ORDERED**.

Max O. Cogburn Jr
United States District Judge

---

[3] The 18-month leak out date was September 20, 2023, 301 days before Plaintiff's motion. At $4.726/day ($21,565.95*0.08/365), pre-judgment interest totals $1,422.762.

[4] The 24-month leak out date was March 30, 2024, 119 days before Plaintiff's motion. At $3.151/day ($14,377.30*0.08/365), pre-judgment interest totals $374.991.

[5] $4,197.384 + $4,202.899 + $1,422.762 + $374.991 = $10,198.04.